**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**MOBILE DIVISION**

PATRICK DUNN,                                )
                                             )
              **Plaintiff,**                 )
                                             )
v.                                           )          **CIVIL ACTION**
                                             )
BUBBA'S SEAFOOD HOUSE,                       )          _____
INC.,                                        )
                                             )
              **Defendant.**                 )
                                             )

## COMPLAINT

## I.  INTRODUCTION

Plaintiff, Patrick Dunn, files this Title III, Americans with Disabilities Act (hereinafter

"ADA") action, pursuant to 42 U.S.C. §12181, _et seq._ In Count One of the Complaint, Plaintiff

seeks to enjoin the Defendant to remove architectural barriers. In Count Two of the Complaint,

Plaintiff seeks to enjoin Defendant to maintain policies, practices, and procedures necessary to

maintain the premises free of architectural barriers both now and once the barriers are removed.

In Count Three of the Complaint, Plaintiff seeks to enjoin the Defendant's use of the premises to

provide full and equal enjoyment of the Bubba's Seafood House environment to the disabled.

Counts Two and Three of the Complaint seek independent relief in addition to the removal of

architectural barriers. Count Four of the Complaint seeks to enjoin Defendant's failure to design

and construct the establishment to ADA compliance.

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.   Because this is an action for declaratory and injunctive relief pursuant to Title III of the ADA, 42 U.S.C. §12181, *et seq.*, and its implementing regulations, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2.   Venue is proper in this Court, the United States District Court for the Southern District of Alabama, pursuant to Title 28, U.S.C. §1391, and the Local Rules of the United States District Court for the Southern District of Alabama.

3.   Plaintiff, Patrick Dunn, was involved in an automobile accident which caused permanent damage to his C-7 vertebra in his spinal cord. As a result, he became paralyzed, which has permanently confined him to a wheelchair. The extent of Plaintiff's physical problems limits his ability to care for himself, perform manual tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102(2)(A). Plaintiff is, accordingly, disabled pursuant to the ADA, in that he has a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; *see also*, 28 C.F.R. § 36.104.

4.   Defendant, Bubba's Seafood House, Inc. (hereinafter "Bubba's Seafood House"), is a limited liability company that is both registered to conduct business and is conducting business within the State of Alabama sufficient to create both general and specific *in personam* jurisdiction. Upon information and belief, Bubba's Seafood House operates the Bubba's Seafood House restaurant located at 24621 Perdido Beach Boulevard, Orange Beach, Alabama 36561. The Bubba's Seafood House restaurant is a commercial facility in that the unit is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)(A). Moreover, the establishment "ha[s]

become the place for food and fun", which qualifies Bubba's Seafood House as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

5. All events giving rise to this lawsuit occurred in the Southern District of Alabama and the Defendant is a citizen thereof.

6. Plaintiff, Patrick Dunn, enjoys vacationing with his family in Orange Beach at least once a year and eating out at the restaurants. Specifically, Plaintiff enjoys eating at Bubba's Seafood House because it "ha[s] become the place for food and fun." Plaintiff intends to continue going to Bubba's Seafood House, because he wants to enjoy the food and fun. He will return not only to eat at Bubba's Seafood House, but to also confirm compliance with the ADA by Bubba's Seafood House. Plaintiff does not know exactly when he will go back to Bubba's Seafood House because he has not planned every meal for the rest of his life. Such specific planning is not necessary to invoke the ADA. *See, e.g. Parr v.  L & L Drive Inn Restaurant*, 96 F. Supp.2d 1065, 1079 (D. Haw 2000); *Segal v. Rickey's Restaurant and Lounge, Inc.*, No. 11-61766-cn, (S.D. Fla 2012) ("Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment".). Nevertheless, Plaintiff intends to return to Bubba's Seafood House.

7. Because of the barriers described below in paragraph 20 and throughout the Complaint, Plaintiff has been denied the full and equal enjoyment of the Defendant's premises on the basis of his disabilities.

8. Plaintiff, accordingly, has Article III standing to pursue this case because (1) Plaintiff is disabled, pursuant to the statutory and regulatory definition; (2) the Defendant's

restaurant is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) Plaintiff has suffered a concrete and particularized injury by being denied access to the establishment by architectural barriers, by being denied access by the Defendant's policies, practices, and procedures described throughout this Complaint, by Defendant's denial of the use of Bubba's Seafood House for Plaintiff's full and equal enjoyment as the able-bodied, as described throughout the Complaint, by Defendant's failure to design and construct the establishment to ADA compliance, as described throughout the Complaint; and (4) because of these injuries, there exists a genuine threat of imminent future injury, as described in paragraph 18.

## II.     PLAINTIFF'S CLAIMS

### ADA, Title III

9.     On or about July 26, 1990, Congress enacted Title III of the ADA, 42 U.S.C. §12181 *et seq*. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508(A); *see also*, § 36.304).

10.     Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's establishment is a place of public accommodation in that it is a restaurant providing food and drink to the public. Accordingly, it is covered by the ADA and must comply with the Act.

**COUNT ONE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12182(b)(2)(A)(iv)**
*(Architectural Barriers)*

**Defendant's Existing Facility Is Subject to the 2010 ADA Design Standards for the Portions of the Facility Addressed in This Complaint**

11.   Plaintiff is informed and believes based on publicly available information that the building in which Bubba's Seafood House is located at 24621 Perdido Beach Boulevard, Orange Beach, Alabama 36561 was first constructed in 1996.

12.   Plaintiff is further informed and believes based on publicly available information that the establishment in which the Bubba's Seafood House restaurant is located at 24621 Perdido Beach Boulevard, Orange Beach, Alabama 36561, underwent alterations and/or improvements to the establishment after 1996.

13.   The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an existing facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All alterations made to existing facilities after January 26, 1992, and all new construction after January 26, 1993, must be readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs. 42 U.S.C. § 12183(a)-(b). 28 C.F.R. § 36.402. "Readily accessible to and usable by . . ." is the new construction standard, which requires compliance with the Department of Justice standards. 42 U.S.C § 12183(a)(1); 28 C.F.R. § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the new construction standards is if the design and construction of the building to be readily accessible and usable is structurally impracticable. 42 U.S.C. § 12183(a)(1). The

structural impracticability defense applies only in rare circumstances of extraordinary terrain. 28 C.F.R. § 36.401(c). "Readily accessible to and usable by . . .." is also the  alterations standard. 42 U.S.C. § 12183(a)(2). Alterations must be made to the maximum extent feasible.  42 U.S.C.  § 12183(a)(2); 28 C.F.R. § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 C.F.R. § 36.402(b).

14. New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design or the 2010 Standards for Accessible Design. 28 C.F.R. § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 C.F.R. § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 C.F.R. § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if

the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable. *See* 28 C.F.R. § 36.406(5)(ii), which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

15.    For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

**Plaintiff's Concrete and Particularized Standing to Pursue an Injunction**

16.    The Defendant has discriminated, and continues to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at Bubba's Seafood House in derogation of 42 U.S.C. § 12101 *et seq*., and as prohibited by 42 U.S.C. § 12182 *et seq*. As new construction, the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a)-(b).  Defendant's failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

17.    As described above, prior to the filing of this lawsuit, Plaintiff was denied full and safe access to the benefits, accommodations, and services offered to individuals without disabilities within and about the Defendant's establishment. Plaintiff's access

was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the establishment in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

18. Plaintiff has definite plans to return to Bubba's Seafood House in the future, as described in paragraph 6. Plaintiff will return to Bubba's Seafood House within the next few months not only to enjoy the food and fun, but also to see if Defendant has repaired the barriers and changed its policies, practices, and procedures. Plaintiff will continue to do so even when Bubba's Seafood House is repaired, because Bubba's Seafood House is an enjoyable place. Plaintiff certainly would not want to stop going when Bubba's Seafood House is repaired, and its practices are modified; that is all the more reason to go. Also, and of vital importance, the barriers are not just created by construction issues; instead, many of them are created by human activity, from the way the Defendant's workers at the establishment use the physical architectural elements of the facility. The barriers created by human activity will need to be reviewed and maintained forever, to be sure Defendant's management and workers continuously act in a manner that does not create barriers. Absent remedial action by Defendant's, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendant on the basis of his disabilities. The Eleventh Circuit held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied "there is a 100% likelihood that plaintiff . . . will suffer the alleged injury again when plaintiff returns to the store." Due

to the definiteness of Plaintiff's future plans to continue visiting the subject establishment, there exists a genuine threat of imminent future injury.

## Architectural Barriers

19.  Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

20.  Plaintiff has been from the parking lot to the entrance; from the entrance to the hostess counter; from the hostess counter to the dining area; from the dining area to the restrooms; the restrooms themselves, throughout circulation paths and accessible routes, and service areas, paths of travel, and in particular but not limited to all of which is more specifically described below. Moreover, Defendant's facility located at 24621 Perdido Beach Boulevard, Orange Beach, Alabama 36561, violates the ADA in the parking lot, dining area, restroom, and in particular but not limited to:

   A.  Defendant provides a parking area with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible parking spaces  to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation which includes but is not limited to the following failures of Defendant:

      (1)  Defendant fails to maintain the parking area and its associated

accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals;

**(2)** The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the level parking spaces measure 96 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum and connect to an accessible route to the entrance of the establishment;

**(3)** The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles extends the full length of the parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled;

**(4)** The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that

the parking spaces adjacent access aisles do not overlap the vehicular way;

**(5)** The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

**(6)** The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled;

**B.** Defendant provides a parking area with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible van parking spaces  to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and

services provided at Defendant's place of public accommodation which includes but is not limited to the following failures of Defendants:

**(1)** Defendant fails to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to van parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals;

**(2)** The parking area fails to maintain the required amount of accessible van accessible parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking space measures 132 inches wide minimum with an adjoining compliant access aisle that measures 60 inches wide minimum, or alternatively a 96 inch wide space with an adjoining 96 inch wide access aisle, and connects to an adjoining accessible route to the entrance of the establishment;

**(3)** The parking area fails to maintain the required amount of accessible van parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking spaces adjacent access aisle extends the full length of the parking space and is marked so as to discourage

parking in the access aisle which renders it unusable by the disabled;

**(4)**   The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way;

**(5)**   The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign;

**(6)**   The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled;

**C.**  Defendant provides a route from the parking lot to the entrance for able-bodied individuals but fails to provide an ADA accessible route from the parking lot to

the entrance for non-able-bodied individuals, which prohibits individuals with disabilities from having the same opportunity to benefit from the goods, services, facilities, privileges, advantages, or accommodations as individuals without disabilities which includes but is not limited to the following failures of Defendants:

**(1)** The handrails serving the ramp run to the entrance of the facility fail to comply with the ADA Standards for Accessible Design;

**(2)** The handrails fail to extend 12 inches minimum beyond the top and bottom of the ramp run;

**(3)** The handrails provide square cross sections which fail to comply with the ADA Standards for Accessible Design;

**(4)** There are not handrails provided on both sides of the ramp;

**D.** Defendant provides several types of dining surfaces disbursed throughout the establishment for the consumption of food or drink at the indoor dining area for able-bodied individuals, but fails to maintain that same level of service to individuals without disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation which includes but is not limited to the following failures of Defendant:

**(1)** There is not at least 5% of the seating spaces and standing spaces at the indoor dining surfaces that are maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled

individuals which includes but is not limited to the accessible route to the dining surfaces which has the discriminatory effects of rendering the indoor seating spaces and its associated elements as unusable by disabled individuals.

**(2)**   There is not at least 5% of the seating spaces and standing spaces at the indoor dining surfaces that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space.

**(3)**    There is not at least 5% of the seating spaces and standing spaces at the indoor dining surfaces that are maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface.

**(4)**   There is not at least 5% of the seating spaces and standing spaces at the indoor dining surfaces that are maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finished which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the establishment.

E.  Defendant provides a bar for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

   (1)  The top surface of the bar exceeds the maximum allowed height of 34 inches above the finished floor;

   (2)  The bar fails to provide at least five percent (5%) of its bar seating as ADA accessible;

   (3)  The bar counter fails to provide the required knee clearance for an individual with a disability to be afforded the opportunity to position for a forward approach to sit at the bar;

   (4)  The bar counter fails to provide the required toe clearance for an individual with a disability to be afforded the opportunity to position for a forward approach to sit at the bar;

   (5)  Defendant fails to maintain the accessible features at bar counter that are required to be readily accessible to and usable by individuals with disabilities;

F.  Defendant provides a hostess counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation

that is equal to the experience afforded to individuals without disabilities, including but not limited to the following failures of Defendants:

**(1)** The hostess counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    **a.** There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    **b.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**(2)** The existing hostess counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    **a.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **b.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

    **c.**  There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**(3)**  There is no ADA accessible portion of the hostess counter that extends the same depth as the non-accessible portion of the hostess counter;

**(4)**  Defendants fail to maintain the accessible features at the hostess counter that are required to be readily accessible to and usable by individuals with disabilities;

**G.**  Defendant provides check-out counters for able-bodied individuals, but fails to identify the accessible check-out counter by displaying the International Symbol of Accessibility, which includes but it not limited to the following failures of Defendant:

**(1)**  There is not at least one checkout counter that provides a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

    **a.**  There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

**b.** There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**(2)** There is not at least one counter that provides a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

**a.** There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**b.** There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**c.** There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

**(3)** There is not at least one ADA accessible counter that extends the same depth as the non-accessible portion of the counter;

(4)   There is not at least one ADA accessible check writing surface provided 28 inches minimum and 34 inches maximum above the finished floor that allows for the required knee and toe clearance;

(5)   The credit card payment terminal is located on a non-accessible portion of the existing counter which prohibits individuals with disabilities from being afforded the opportunity to independently transact business in the same manner as non-disabled individuals;

H.   Defendant provides a restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

(1)   The restroom fails to be maintained in operable condition by conforming with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effects of rendering the toilet compartment, water closet, and its associated elements as unusable by disabled individuals.

(2)   The toilet compartment door fails to have door pulls on both sides of the door.

(3)   The toilet compartment door fails to be self-closing.

**(4)**  The toilet paper dispenser fails to be properly maintained in conformance with the ADA Standards for Accessible Design so that the dispenser is located 7-9 inches from the front of the water closet.

**(5)**  The side wall grab bar fails to conform to the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42-inch-long grab bar that is located a maximum of 12 inches from the rear wall and extending a maximum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor.

**(6)**  The rear wall grab bar fails to conform to the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36-inch-long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor.

**(7)**  The centerline of the water closet fails to be 16 inches minimum to 18 inches maximum from the side wall or partition.

**(8)**  The trash can obstructs the required perpendicular clear floor space at the pull side of the door.

(9)   Defendant fails to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities.

I.   Defendant provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

(1)   The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled.

(2)   The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by disabled individuals.

(3)   There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor.

(4)   There are mats that are not firm, stable, or otherwise secured to the floor.

21. To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

22. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorney's fees, costs, and expenses paid by the Defendant pursuant to 42 U.S.C. §12205.

23. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and usable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order the Defendant to modify its policies, practices, and procedures, to provide equal use of its facilities, services, and benefits to disabled individuals.

### COUNT TWO
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
### 42 U.S.C. § 12182(b)(2)(A)(ii)
### *(Policies, practices, and procedures denying equal benefits)*

### ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers

24. Plaintiff re-alleges paragraphs 1-23 above.

25. The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1).

26. The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an unequal benefit, and to relegate individuals with disabilities to a

different or separate benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided segregated accommodations compared to non-disabled individuals; thus, relegating persons who use wheelchairs "to the status of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

27. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

28. To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns,

leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

29. By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities more than simple physical access. Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); *see also* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

30. For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice, or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon v. Valleycrest Prod., Ltd*., 294 F.3d 1279, (11th Cir. 2002) that:

*A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and intangible barriers (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the Defendants entity's goods, services and privileges.*

## Defendant's Failed Practices and Lack of Policies Are Discriminatory

31.  Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

*[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*

32.  Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled. Similarly, a place of public accommodation must not have a policy or practice that "has a discriminatory effect in practice" of preventing disabled individuals from realizing the full and equal enjoyment of the goods and services the public accommodation offers to potential customers. *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565 (D. Vt. 2015).

33.  As detailed below, Defendant has failed to make reasonable modifications in its policies, practices, and procedures that are necessary to afford its goods, services,

facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated, or otherwise treated Plaintiff differently than individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has discriminated against Plaintiff. Defendant will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

34. Defendant either has no policies, practices, and procedures to remove architectural barriers or else it does not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

35. Defendant's use of its establishment, and its practices at the establishment, located at 24621 Perdido Beach Boulevard, Orange Beach, Alabama 36561, literally create barriers and in so doing deny Plaintiff the full and equal enjoyment of the establishment. Those practices include:

   a) Defendant makes its parking area inaccessible for use by the disabled by failing to provide ADA accessible parking with connecting accessible routes to the establishment from its parking lot, which means that Plaintiff is forced to depend on assistance from a third party to get into the facility, whereas the non-disabled conveniently access the establishment without the need of third party assistance;

**b)** Defendant's seating arrangements are designed, positioned, and oriented in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to sit at one type of table and/or facing the wall, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and enjoy the Bubba's Seafood House dining experience;

**c)** Defendant makes the hostess counter inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Plaintiff cannot fully and equally use the counter to be seated at her table in the way the non-disabled do, because the non-disabled have a hostess counter they can use to be seated at their table;

**d)** Defendant fails to provide an ADA accessible bar in the inside dining area, which means Plaintiff cannot use or dine at the bar like non-disabled individuals can;

**e)** Defendant fails to provide ADA accessible seating tables in the inside dining area, which means Plaintiff cannot use or dine in the dining area like non-disabled individuals can;

**f)** Defendant makes its toilet facilities inaccessible for use by the disabled by failing to maintain ADA accessible elements within the restroom so that Plaintiff is afforded the opportunity to independently use the restroom, or clean up, or move into and throughout the restroom, whereas non-disabled

individuals are able to independently use the restrooms;

g) Defendant makes its checkout counter inaccessible for use by the disabled by failing to maintain an ADA accessible counter;

h) Defendant fails to provide a place for the disabled both to sit and eat like able-bodied people can;

i) Defendant's policies, practices, and procedures are conducted without regard to disabled individuals;

36. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv)-(v).

37. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant's existing practice is both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon demand by the disabled.

38. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, and procedures or else it failed to create, implement, and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at its facilities as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular, the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of Bubba's Seafood House, as described above in detail.

39.    As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

40.    To date, the Defendant's discriminating policies, practices, and procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

41.    A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiff hereby demands that Defendant both create and adopt a corporate practice and policy that Defendant (1) will fully comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are permanently removed from Defendant's establishment consistent with the ADA; (2) Defendant will provide the disabled, including those with mobility limitations full and equal use and enjoyment of Bubba's Seafood House; (3) Bubba's Seafood House will modify its practice of making ADA Title III architectural barrier remediations only upon demand by the disabled.

42.    As pled above, Bubba's Seafood House, Inc., operates the Bubba's Seafood House restaurant located at 24621 Perdido Beach Boulevard, Orange Beach, Alabama 36561, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

43.    The ADA is over twenty-five (25) years old. Defendant knows it must comply with the ADA, Title III. The ADA, Title III requires modifications in policies, practices, and procedures to comply with the ADA, as pled above in the statute. 42 U.S.C.

§12182(b)(2)(A)(ii).

44.   By this Complaint, Plaintiff provides sufficient notice of his demands for an alteration in Defendant's policies, practices, and procedures.

45.   Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorney's fees, costs, and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

46.   Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*

47.   Plaintiff re-alleges paragraphs 1-46 above.

48.   42 U.S.C. § 12182(a) provides:

> *No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.*

49.   Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

50.   Congress also found that: "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective

rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities, 42 U.S.C. § 12101(a)(5); "the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;" 42 U.S.C. § 12101(a)(7). Congress even found that: "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity." 42 U.S.C. § 12101(a)(8).

51.   In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

52.   The ADA provides, *inter alia*, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

53.   The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability . . . with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is

not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

54. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, *et seq*., and the regulations promulgated thereunder.

55. To address this broad range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination*"* including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); *see also* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

56.     For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice, or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

57.     The keystone for this analysis is Defendant must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. *Spector v.  Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005); *see also*, *Baughman v.  Walt Disney World Company*, 685 F.3D 1131, 1135 (9th Cir. 2012).

58.     Plaintiff, Patrick Dunn, was denied full and equal access to Bubba's Seafood House. Plaintiff specifically and definitely wants to return to the Defendant's establishment because he wants to enjoy the food and fun. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals and which Defendant has failed to provide to Plaintiff as follows: Defendant failed to provide an accessible parking area and accessible route for disabled individuals, which means Plaintiff cannot park, cannot independently get out of the car and onto his wheelchair, cannot independently travel from the parking area into the establishment, cannot determine if there is a usable parking space, and must determine by trial and error how he is to park and move into the establishment; Defendant's failure to provide Plaintiff the same enjoyment of the food and fun by Bubba's Seafood House's use of its seating arrangements that are designed,

positioned, and orientated in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience afforded to able-bodied individuals, because unlike able-bodied individuals, disabled individuals are forced to sit at one type of table or facing the wall, or otherwise outright excluded from the opportunity to sit anywhere else that able-bodied individuals are able to sit and enjoy the Bubba's Seafood House experience; Defendant failed to provide an accessible seating area for disabled individuals, which means Plaintiff cannot independently use and dine at the inside seating; Defendant failed to provide the same experience by making it nearly impossible for the disabled to access the hostess counter, while the non-disabled can independently access the counter and services provided at the counter; Defendant failed to provide an accessible restroom for disabled individuals, which means that, unlike the able-bodied, the disabled are challenged or denied the opportunity to independently use the restroom, clean up after using the restroom, move throughout the restroom, and prohibited from using all the other elements of the restroom; Defendant's failure to provide an accessible checkout counter; Defendant's continued failure to maintain ADA accessibility as an integral part of the highest possible dining experience that non-disabled individuals get to independently enjoy has segregated or otherwise treated Plaintiff and others similarly situated differently, in that, Bubba's Seafood House makes Plaintiff dependent on family or an independent third party, which is not the same dining experience that Bubba's Seafood House affords to non-disabled individuals and all the foregoing failures by Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have when at Bubba's Seafood House.

59.   In its Preamble to the Title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, § 36.203.

60.   The ADA specifically makes it unlawful to provide individuals with disabilities with an unequal benefit, and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. § 12182(b)(1)(A)(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided "inferior seating" and "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

61.   Thus, Defendant's use of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated the disabled from the non-disabled individuals. "The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and

should be rejected." *H.R. Rep. No. 101-485(III),* at 50*, 1990 U.S.C.C.A.N* at 473*. The* ADA provides a broad mandate to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332).

62.   Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Bubba's Seafood House.

63.   Defendant's conduct and Defendant's unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally.

64.   Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitutes continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facility. 28 C.F.R. § 36.211(a).

65.   Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorney's fees, costs, and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

66.    Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of

Defendant.

**COUNT FOUR**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III**
**42 U.S.C. § 12183(a)(1)**

*(Failure to design and construct facility for ADA compliance)*

67.    Plaintiff re-alleges paragraphs 1 - 66.

68.    42 U.S.C. § 12183(a)(1) provides:

> *[Discrimination includes] a failure to design and construct
> facilities for first occupancy later than 30 months after July 26,
> 1990, that are readily accessible to and usable by individuals
> with disabilities, except where an entity can demonstrate that it
> is structurally impracticable to meet the requirements of such
> subsection in accordance with standards set forth or
> incorporated by reference in regulations issued under this
> subchapter.*

69.    Congress passed the ADA in part because "historically, society has tended to isolate

and segregate individuals with disabilities, and such forms of discrimination . . .

continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

Congress found that this discrimination included "segregation and relegation to lesser

services, programs, activities, benefits, jobs, or other opportunities." *Id.* §

12101(a)(5). In its Preamble to the Title III regulation, the Department of Justice

recognized that persons in wheelchairs should have the same opportunities to enjoy

the goods and services and other similar events of a public accommodation with their

families and friends, just as other non-disabled individuals do. The DOJ further

recognized that providing segregated accommodations and services relegates persons

with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, § 36.203.

70. To eliminate such segregation, Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities". This very requirement is intended to enable persons with disabilities "to get to, enter and use a facility." H.R. Rep. No. 101- 485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," *id.*, as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is to ensure that the service offered to persons with disabilities is equal to the service offered to others." *Id.*

71. As the legislative history makes clear, the ADA is geared to the future -- the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, while requiring all new construction to be accessible. H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

72. To realize its goal of a fully accessible future, Congress required that all newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design ("Standards") are incorporated into the Department of Justice's regulation implementing Title III of the ADA, 28 C.F.R. Part 36, Appendix.

73. The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances,

common areas, seating, restrooms, and sales/service areas.

74. Defendant, Bubba's Seafood House, Inc., operates the Bubba's Seafood House restaurant, and at all relevant times was and is directly involved in the designing and/or construction of the restaurant in this litigation for first occupancy after January 1993.

75. Defendant was and is required to design and construct the Bubba's Seafood House restaurant to be "readily accessible to and usable by individuals with disabilities." Defendant violated the statute by failing to design and construct its restaurant to be readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendant further violated the statute by failing to design and construct its restaurant in compliance with the ADA during planned alterations as described throughout this Complaint.

76. To date, the Defendant's discriminating actions continue.

77. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorney's fees, costs, and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

78. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal actions by Defendant.

**WHEREFORE**, premises considered, Plaintiff, Patrick Dunn, demands judgment against the Defendant on Counts One through Four and requests the following injunctive and declaratory relief:

1. That the Court declare that the property owned and business operated by the Defendant as well as all Defendant's illegal actions described herein violate the ADA, as more particularly described above;

2. That the Court enter an Order enjoining the Defendant to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3. That the Court enter an Order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future;

4. That the Court enter an Order directing the Defendant to provide Plaintiff full and equal access both to the Bubba's Seafood House experience and to the use of the establishment, and further order Defendant to maintain the required accessible features at the establishment so that Plaintiff and others similarly situated are offered the same experience that is offered to non-disabled individuals, as stated in Count Three;

5. That the Court enter an Order directing the Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow it to undertake and complete corrective procedures;

6.      That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff;

7.      That the Court enjoin Defendant to remediate the Bubba's Seafood House restaurant to the proper level of accessibility required for the design and construction of the facility for first occupancy, as stated in Count Four; and

8.      That the Court award such other, further, and different relief as it deems necessary, just, and proper.


Respectfully Submitted, this the ___4th___ Day of May 2018.


                             /s/ _Cassie E. Taylor_____
                                 **CASSIE E. TAYLOR**
                                 **AL Bar # 8297-N67R**
                                 ADA Group LLC
                                 4001 Carmichael Road, Suite 570
                                 Montgomery, Alabama 36106
                                 334.356.5314 p
                                 334.521.3859 f
                                 CET@ADA-Firm.com
                                 *Attorney for the Plaintiff*

/s/ _____
**L. LANDIS SEXTON**
**BPR # AL-5057N71L**
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
LLS@ADA-Firm.com
*Attorney for the Plaintiff*


/s/ _____
**TRACY G. BIRDSONG**
**BPR # AL-2170D64T**
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
TGB@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this __4th__ Day of May 2018 to the following:

**Bubba's Seafood House, Inc.**
Attn.: Registered Agent
P.O. Box 129
Orange Beach, Alabama 36561

/s/ _Cassie E. Taylor_
　　　　**CASSIE E. TAYLOR**
　　　　**AL Bar # 8297-N67R**
　　　　ADA Group LLC
　　　　4001 Carmichael Road, Suite 570
　　　　Montgomery, Alabama 36106
　　　　334.356.5314 p
　　　　334.521.3859 f
　　　　CET@ADA-Firm.com
　　　　*Attorney for the Plaintiff*